# J. M. CROSLAND ET AL. v. MUTUAL SAVING FUND.

## ERROR TO THE COURT OF COMMON PLEAS OF SCHUYL-KILL COUNTY.

Argued February 13, 1888—Decided October 1, 1888.

1. When the validity of an unrecorded deed as against a subsequent mortgage is supported largely by the testimony of the grantor, it .is competent, after evidence tending to show collusion in an intent to defraud the mortgagee, to admit the acts and declarations of the grantor and of others acting for him and with him, of a character to discredit his testimony and indicate an intent to cheat and defraud the creditor.

2. The facts, that upon the property in dispute was erected when a mortgage was executed a house occupied by tenants but so erected with another house occupied by the mortgagor as to constitute a double house under one roof; that there were no front porches to the house on the lot in dispute, and it was otherwise apparently unfinished; and that the rents were sometimes paid to the mortgagor, are insufficient to relieve the mortgagee of the duty of inquiry as to title.

3 The question for the jury is, whether the building was suitable for, and fairly capable of, a separate occupancy, and whether the mode of access to its parts and its external appearance were such as to make this apparent to an observer; if so, to relieve the mortgagee from the effect of constructive notice of title, inquiry was a duty.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. 147 July Term 1886, Sup. Ct.; court below, No. 61 November Term 1882, C. P.

On September 12, 1882, The Mutual Saving Fund, of Pottsville, presented its petition under the special act of May 13, 1871, P. L. 820, entitled, "An act to obtain possession of real estate by purchasers at coroners', sheriffs' and Orphans' Court sales within the county of Schuylkill," and sought thereby to obtain possession of a certain lot, 20 by 50 feet, in the borough of Pottsville. To the rule issued upon this petition an answer was filed by John M. Crosland and others, that they

Statement of Facts.

did not hold under John J. Crosland as was alleged, but as the heirs at law of Catherine L. Crosland, deceased. A hearing was had resulting in an issue as in an action of ejectment, wherein the petitioner was made plaintiff and the respondents defendants. The plea was, not guilty.

At the trial on November 30, 1885, the plaintiff made out its case in chief by showing:

On July 15, 1867, Harrison Ryland conveyed to John J. Crosland a lot, 40 by 50 feet, at the corner of East Norwegian and George streets, on which lot there were afterwards erected two contiguous dwellings, one of which with the portion of the lot on which it was erected was the property in dispute. On November 29, 1872, John J. Crosland executed a mortgage for $3,000, upon the entire lot, as conveyed to him by Ryland, to the Mutual Saving Fund, the lot then being subject to a prior mortgage to one Bertram for $600. A judgment in scire facias was obtained by the Mutual Saving Fund on April 26, 1880, upon which a levari facias was issued and the mortgaged property sold thereon in March, 1882, to the mortgagee, the plaintiff in this suit.

The defendants' case in substance was as follows: After his purchase from Ryland, John J. Crosland, proposing to build a double house upon the lot, had his mother Catherine L. Crosland advance him about $3,100 in money, under a parol agreement with her that the corner building, with a store room on the first floor was to remain his own, and the other one with the part of the lot on which it was to be erected (the property in dispute) was to belong to her. The buildings were erected, under this arrangement, both under one roof, but in other respects separate and without means of communication. They were finished in 1868, and Mrs. Crosland put a tenant into her dwelling and, as was claimed, received the rents therefor and had tenants therein until after the execution of the plaintiff's mortgage. On August 5, 1872, a deed was executed and delivered by John J. Crosland to his mother, in pursuance of said arrangement. This deed was recorded on September 1, 1877, and Mrs. Crosland died on October 13, 1879, leaving the defendants as her heirs at law. It was claimed that the plaintiff had notice, by direct information, of the deed to Mrs. Crosland of August 5, 1872, at the time when the loan secured by its mortgage was obtained.

To impeach the defendants' title, the plaintiff denied that it had notice, actual or otherwise, of the conveyance to Mrs. Crosland, and claimed from the facts elicited on the cross-examination of the defendants' witnesses and in its rebuttal, that there was collusion between Mrs. Crosland, John J. Crosland and John M. Crosland, his father, to defraud the plaintiff; that when the loan of 1872 was obtained the property offered as security by the borrower was a double three-story brick store and dwelling; that the entire property was assessed in 1869–77 to John J. Crosland; that on May 29, 1874, John J. Crosland obtained an additional loan for $1,400, negotiated for by John M. Crosland, his father, the security offered, accepted and embraced in this second mortgage being the same property with the same double brick house: That this last mortgage was acknowledged before John M. Crosland, who was a justice of the peace; that on February 5, 1875, as further protection upon the loans, John J. Crosland obtained an insurance for $2,000, " on a certain three-story brick tin-roofed store and dwelling house " and assigned the policy to the plaintiff, as security " for certain loans made by me on above described property," and on the same day, Mrs. Crosland obtained an insurance for $1,500, and assigned it to the plaintiff as security " for certain loans made John J. Crosland, on the above described premises ; " that the transfer of this policy was witnessed by said John M. Crosland, and approved by him as agent of the insurance company.

John J. Crosland, a witness for defendants in chief, on cross-examination:

Plaintiff's counsel propose to show by this witness on cross-examination that in 1874 he procured a second loan upon the property in controversy and the adjoining property; that he represented at that time that he owned both properties; that he took the committee, not only at the time the first loan was required but at the time the second loan was required, either took them or sent them, to this property for the purpose of examining, and either by himself or his agent made representations as to the value of the property in controversy, and that it was unencumbered except as to the Bertram mortgage ; that the committee went and examined the property at either his or his agent's instance and reported favorably, and he exe-

cuted a mortgage upon both properties, the property in controversy and the other property adjoining for $1,400, and obtained the money from this association on the seven shares bought out: For the purpose of laying ground for contradiction, and for the purpose of showing that the representations made in 1874 as well as in 1872 are inconsistent with the allegations that he notified this company that he had conveyed to his mother. Objected to: (1.) That it is not a cross-examination. (2.) As it relates to another and a different transaction made at another and different time, it is immaterial and irrelevant. (3.) That it does not contradict, impair or impeach the declarations that were made at the time the mortgage was given on which this property was sold. (4.) There is no evidence of any $1,400 mortgage. If there is such a mortgage it necessarily must be in writing. It must speak for itself, and it is incompetent to prove by parol evidence the existence of such a mortgage and its contents or any part of it.

By the court: Evidence admitted. [4]

The same witness:

Q. Was not this mortgage of 1874 read to you before you signed it? Objected to.

Plaintiff's counsel: It is for the purpose of showing that he signed it understandingly and knowing exactly what its contents were.

By the court: A long while ago this witness answered this question, saying "I do not remember," etc. They may repeat the question and you may state your objection to it. [5]

Plaintiff's counsel propose to prove that he made a second loan in 1874 of $1,400 upon the same property, covered by the first mortgage, under the same representations upon which he procured the first loan. Objected to, as not a cross-examination, and as irrelevant for any purpose.

By the court: We think we will allow him to answer the question and give you an exception. [6]

Plaintiff's counsel offer in evidence mortgage dated May 29, 1874, for $2,800 conditioned for the payment of $1,400; also on condition that he pay monthly on each and every share of stock now held by him or that hereafter may be held by him, until the said association shall terminate and cease to exist, the interest at the rate of one half per centum on the sum of

$1,400 loaned him as aforesaid, etc., on the property on George and Norwegian streets, 40 feet front on Norwegian and 50 feet in depth, being same premises described in previous mortgage: acknowledged before John M. Crosland, J. P.: Offered as a circumstance bearing upon the question of notice having been given to this association of the title of Catherine Crosland: also as evidence going to contradict the evidence of John J. Crosland that he gave notice to the committee to examine and report upon this loan.

To be followed by evidence by the members of the committee and the board of directors that no such notice was ever given by the defendant, John J. Crosland, and that they never had any knowledge, notice or information of any such outstanding title until it was communicated to them some time in the year 1878, when proceedings were about to be commenced upon this mortgage; and as a circumstance, to be followed further by the evidence that John J. Crosland and John M. Crosland, with the intent to cheat and defraud this association, conspired to execute this deed and obtain this loan by suppressing the facts, and without putting their deed upon record until three years after these loans were procured, and until after John J. Crosland had defaulted in his payments to the association, and until proceedings could be commenced under the mortgage. To be followed by further evidence that the deed to Mrs. Crosland was not executed on August 5, 1875, or, at all events, never delivered, and that it was never used nor claimed under, until after default was made upon this mortgage, and then only for the alleged purpose of allowing John M. Crosland as terre-tenant to ask to open this judgment. To be followed further by evidence that John M. Crosland as the agent of John J. Crosland applied for this second loan in writing, and expressly stated that this loan was to be secured upon both of those brick houses, and that it was free and clear of all incumbrances except the prior mortgage of this association and the $600 Bertram mortgage.

Defendants' counsel objects:

All of the offer, except that portion which proposes to show that the deed which the defendant has put in evidence from J. J. Crosland to his mother was not delivered and was not founded upon a valid consideration, is objected to as not rebut-

ting evidence, not contradicting or tending to contradict the fact of notice conveyed to Dornan, and therefore incompetent.

By the court: Admitted.[8]

J. J. Cake, for the plaintiff in rebuttal, testified that he was secretary of the plaintiff society.

Q. When did John J. Crosland first become in arrear?

Plaintiff's counsel propose to show the time when Mr. Crosland first became in arrear: that soon after that the assessments were changed and, about that time or after about six months had elapsed when the mortgage could have been foreclosed, then they learned for the first time that Catherine L. Crosland had a claim to this property, for the purpose of fixing the date so as to bear upon the question of concealment of this title and deed until such time when they became in arrear and the mortgage was enforceable; that they changed the assessment in the books and changed the apparent ownership of the property, as bearing upon the question of fraud and mala fides of the transaction.

Defendants' counsel objects, that the testimony contained in the offer is not rebutting evidence; that it is immaterial when Crosland became in arrear.

By the court: I suppose it appears from the record in evidence in this case, declarations and answer filed, which are all in evidence, when the parties came in default. If he knows the time when the default began he may state it.

Plaintiff's counsel: I will alter my offer so as to call the witness' attention to the first time he was informed in conversation with John M. Crosland of the transfer of this property from John J. to his wife, and what was said at that time by John M. Crosland to him as representing John J. Crosland and about his ability to pay and about his being in arrear.

Objected to by the defendant as the declaration of a stranger, at this time, to the title.

By the court: Admitted.[9] I would like to have anything said as representing John J. Crosland.

A. On September 24, 1878, at a regular meeting of the board of directors Mr. Crosland appeared and made the following statement. John J. Crosland had previously been notified of his arrears and certain action of the board. Mr. Crosland stated that his son, John J. Crosland, was over six months in

Charge of Court below.

arrear for dues, interest and fines; that owing to the strin-
gency of the times it had so far been impossible for him to
make the payments required by the saving fund, neither
could he confess judgment as required by the saving fund, as
the property did not belong to John J. Crosland, but to his
mother. He stated also that, if the association intended to
push on the mortgage, they intended to employ a lawyer and
contest the claim of the association.

Q. Did Mr. Crosland at that time state when the title of
Mrs. Crosland was acquired? A. No, sir; I think not, at least
I do not know of it. I have no record of it. He may have
stated it. Q. Did you know or did you hear prior to that
date of any transfer of this property to Mrs. Crosland?
A. The first information I had.

The court, BECHTEL, J., after fully reviewing the evidence
charged the jury as follows:

John J. Crosland acquired title to the premises in question
under a deed from Harrison Ryland, dated July 15, 1867,
which deed is recorded in deed book 101, page 439, on Febru-
ary 12, 1868. The said John J. Crosland executed a mortgage
to the Pottsville Mutual Saving Fund, under which the plaint-
iff claims title, dated November 29, 1872, which was recorded
on November 30, 1872, in book "O. O.," page 59. His deed to
Catherine L. Crosland bears date August 5, 1872, and is
recorded on September 1, 1877, in book 148, page 69. From
these dates, found in this last mentioned deed, and the mort-
gage, it appears that the mortgage, which was recorded the
day following its date, was first recorded, and was of record
nearly five years previous to the recording of the deed of
Catherine Crosland.

Deeds and mortgages are both within our recording act, and
when two different parties purchase from the same grantor, he
who purchases first must record his deed within six months, in
order that he may protect himself as against the second or
subsequent purchaser, in the absence of actual or constructive
notice to the second purchaser, of the title of the first pur-
chaser at the time that he, the second purchaser, made his pur-
chase or obtained his deed. We say, therefore, to you that the
record of these two instruments to which we have directed

Charge of Court below.

your attention, is such, that in the absence of actual or constructive notice to the plaintiff of the existence of the deed of Catherine L. Crosland, at the time the mortgage was given, or prior thereto, the mortgage would be prior in right by reason of the failure of said Catherine Crosland to record her deed in time.

But the defendants claim that the plaintiff had actual or constructive notice, or both, at the time it received the mortgage, and that therefore the plaintiff's position is the same as it would be had Catherine Crosland recorded her deed within the time mentioned in our recording act. This makes it necessary that we should instruct you upon these subjects.

Distinct, unequivocal and actual possession is sufficient to put a purchaser on inquiry, and amounts to constructive notice. A purchaser is bound by the fact of such possession to make inquiry as to the state of the title, and is chargeable with notice of the actual condition of the title, which such inquiry would have developed. Actual notice may, of course, be given by direct information to the party about to become the second purchaser, or by information to the authorized agent of the party about to become the second purchaser, of the existence of the first deed. [We are disposed to think that notice to the attorney of the saving fund, if given to him as such attorney, would be equivalent to notice to the saving fund, for it would be a part of his duty to examine the title to the property offered as security for loans, and such information or notice would bear upon the question of title.] [10]

[Keeping this in mind, inquire, is the deed from John J. Crosland to Catherine L. Crosland an honest, bona fide conveyance of the land it describes, and not. intended by the grantor and grantee to hinder and delay or cheat and defraud the Pottsville Mutual Saving Fund ; for, if it was intended by these parties to hinder and delay or cheat and defraud this plaintiff, then it passes no title to the property it describes, as against the mortgage of the plaintiff, and in case you so find, the plaintiff would be entitled to your verdict for the premises in controversy.] [11]

[If you find it was not intended to hinder and delay or cheat and defraud the plaintiff, and was executed and delivered to Catherine L. Crosland or to any one for her prior to Novem-

ber 29, 1872 (the date of the plaintiff's mortgage), and further find, that said Catherine Crosland was in the actual, distinct and unequivocal possession of the house and lot which her deed describes, in pursuance of her deed, prior to and at the time the saving fund obtained its mortgage, to wit, November 29, 1872, then we say that such possession was constructive notice to the saving fund of her title and made it the duty of the saving fund to inquire as to her title; and, therefore, if you thus find, the defendants would be entitled to your verdict.] [12]

[If you find that Catherine Crosland's deed was honest, bona fide and not intended to hinder and delay or cheat and defraud the plaintiff, and further find that notice was given to the saving fund at or before the time the mortgage was given to it, that such deed was in existence and that said Catherine L. Crosland claimed the premises under such deed, then we say, such notice served the same purpose that the recording of the deed within the time required by law would have served, and in case you so find, the defendants would be entitled to the verdict.] [13]

[If you find that Catherine Crosland's deed arises out of an honest transaction and was not designed by the parties thereto to cheat and defraud or hinder and delay the plaintiff, but further find that she did not have such actual, distinct, unequivocal possession as we have heretofore directed your attention to, and that no actual notice of her title was given to the Pottsville Mutual Saving Fund, or to its authorized agent, at or before the time John J. Crosland executed and delivered the mortgage to the saving fund, then in case you so find, the plaintiff had neither actual nor constructive notice of Mrs. Crosland's title, and the title passed by virtue of the sheriff's sale to the plaintiff under the mortgage and you should find for the plaintiff.] [14]

The defendants request us to instruct you as follows:

1. If the jury believe that Catherine Crosland the deceased mother of the defendants, with money, her own separate property, gave to John J. Crosland about $3,100 with which to erect the house upon the lot in question, with an agreement that she should own it, and that after the erection of the same, the said John J. Crosland executed the deed dated August 5,

1872, to the said Catherine Crosland, such deed vested a good title to the property in the said Catherine Crosland which passed by her death to her heirs, defendants on the record.

Answer : To prove a parol sale of lands the proof should and must be clear, precise, distinct and satisfactory. Keeping in mind what we have said to you concerning the consequences of the failure to record the deed from John J. to Catherine Crosland, and the effect of actual, distinct and unequivocal possession in her, and of actual notice to the plaintiff or its authorized agent of the existence of her deed, as well as that which we said touching the bona fides of her conveyance, we affirm this. [15]

3. If the jury believe that Catherine Crosland took possession of the house and lot in suit, in the latter part of the winter or early in the spring of 1868, by her tenant, under a claim of title, and continued the possession by her tenants, up to and at the time the mortgage was given, under which the plaintiff claims title, the plaintiff had notice of the title of Catherine Crosland, and her title was not affected by the sheriff's sale, under which the plaintiff claims ; and if the jury find her deed from John J. Crosland to have been founded upon a consideration and a bona fide transaction, the verdict must be for the defendants.

Answer : The possession of tenant is notice of his own title as tenant, and also of that of the landlord under whom he holds ; and a purchaser is bound by the fact of such possession to make inquiry as to the state of the title, and is chargeable with notice of the actual condition of the title which such inquiry would have developed. If, therefore, you find the facts to be as they are here stated in this point, we affirm.

On the part of the plaintiff we are requested to instruct you as follows :

1. The defendants being the holders of an unrecorded title, in order to prevail against the plaintiff's mortgage for value, they must show affirmatively that the plaintiff had actual or legal notice of the prior right when it made the loan and took the mortgage in 1872 ; and defendants must show it clearly, for they are endeavoring to escape from the recording acts by an equity ; the defendants cannot ask a jury to find or assume that the plaintiff had notice without positive evidence of the fact.

Answer: We affirm this.[17]

2. The plaintiff was not bound to inquire of occupants, if there were any, of the premises in dispute, unless there was such a visible state of things as was inconsistent with the right in John J. Crosland to mortgage the premises; and to affect the plaintiff with constructive notice or to make it a duty to inquire, the possession must have been clear, open, notorious, unequivocal and actual, such as would suffice to constitute a disseizin or adverse possession.

Answer: This point states the rule substantially as given to us in the case of Meehan v. Williams, 48 Pa. 240, which has been approved in late cases, and we therefore affirm it.[18]

3. If the property in suit was built with the building occupied by J. J. Crosland and is a part of the same building under one roof, commonly denominated a double house, one of which was during 1872, at the time the first loan was made by Crosland, occupied by John J. Crosland, and the other if occupied was by a tenant, and at the time of the making of the first mortgage there were no front porches to the house in suit, and it was otherwise apparently unfinished, and the rents of the tenants were sometimes paid to John J. Crosland, and if the facts were such as to appear to an observer that the two houses were one property, there was not such clear, unequivocal evidence of possession in Catherine L. Crosland as to make it a duty of the plaintiff to inquire of the occupants, if any, of said premises, and the plaintiff is entitled to a verdict for the whole of said premises.

Answer: We have heretofore instructed you as to the character of possession that would be sufficient to put the plaintiff upon inquiry, and we say, keeping that in view, if you find the facts in this respect to be as they are here stated, we affirm it. [19]

The verdict of the jury was in favor of the plaintiff, and when judgment was duly entered the defendants took this writ specifying as errors, inter alia:

4–6. The admission of plaintiff's offers.[4 to 6]

8–9. The admission of plaintiff's offers.[8 9]

10–14. The parts of the charge embraced in [ ][10 to 14]

15. The answer to defendants' 1st point. [15]

17, 18. The answer to plaintiff's 1st and 2d points.[17] [18]

19. The answer to plaintiff's 3d point.[19]

*Mr. John W. Ryon*, for the plaintiffs in error:

1. John J. Crosland was not indebted at the time he contracted with his mother, nor at the time he made the deed in compliance with that contract. The inquiry therefore should have been confined to evidence to show a collusive and fraudulent purpose to defraud subsequent creditors, actually intended by the parties at the time of the transaction impeached. The intent, which in general will make such a transfer void, is an actual intent to defraud, and must be proved: Reid v. Gray, 37 Pa. 508; Blake v. Jones, 1 Bailey Ch. 141; Nicholas v. Ward, 1 Head. 323; Lyman v. Cessford, 15 Ia. 229; Snyder v. Christ, 39 Pa. 499; Williams v. Davis, 69 Pa. 21; Harlan v. Maglaughlin, 90 Pa. 293. The conveyance impeached must have been made with an intent to put the property out of the reach of debts which the grantor, at the time of the conveyance, intended to contract and did not intend to pay, or had reasonable grounds to believe he would not be able to pay.

2. Possession having been taken by Mrs. Crosland, in pursuance of her contract and continuously held, the purchase money having been paid in advance, nothing was left to be done after the spring of 1868, save the execution and delivery of the deed. The contract being executed, the vendor was a naked trustee for the vendee without a particle of interest in the property, and the vendee in equity was the actual and complete owner: Sackett v. Spencer, 65 Pa. 89. Wherefore, the answer to the defendants' first point was clearly wrong, not only because it qualified the point by matters that had no necessary bearing upon the principle raised by it, but also because the doctrine, that the evidence to prove a parol sale of land must be clear, precise, distinct and satisfactory, is inapplicable to the case of a parol executed sale, followed by the execution and delivery of a deed in pursuance of it.

3. Without any attempt to disprove the evidence of the fact of notice to the plaintiff of Mrs. Crosland's title, at the time of its mortgage, and that Mrs. Crosland had furnished the money in 1867 and had taken possession of her house in

the spring of 1868, the plaintiff attempted to break their force by evidence of the acts and declarations of John J. Crosland and John M. Crosland, subsequent, not only to the contract of sale to Mrs. Crosland, but to the execution of the deed to her. These acts and declarations, so far as the evidence and the offers show, were without the knowledge of Mrs. Crosland, much less without her participation. The courts have consistently and uniformly excluded such evidence: Simon v. Gibson, 1 Y. 291; Chess v. Chess, 1 P. & W. 32; Pringle v. Pringle, 59 Pa. 281; Scott v. Heilager, 14 Pa. 238; Reichart v. Castator, 5 Binn. 109; Wolf v. Carothers, 3 S. & R. 240, Whiting v. Johnson, 11 S. & R. 328.

4. The general rule is, that nothing shall be given in evidence which does not directly tend to prove or disprove the facts in issue. This rule necessarily excludes independent matters which have no connection with the question trying; and it is not alleged in any of the offers that either John J. or John M. Crosland were authorized or pretended to act for Mrs. Crosland, in the negotiations for the mortgage of 1874: State v. Wisdom, 8 Port. 511; Commonwealth v. Miller, 3 Cush. 243; Tripner v. Abrahams, 47 Pa. 220.

5. The defendants relied upon actual possession by the tenants of Mrs. Crosland, and proof by John J. Crosland that at the time he applied to H. C. Dornan, plaintiff's solicitor, for the loan, he notified Dornan that the house and lot in question was the property of Mrs. Crosland. The fact of the actual occupation was not contradicted by evidence, and Dornan was not called to deny the actual notice. The court erred, not only in disregarding the legal notice derived from the possession, but subjected the defendants to a quality of proof never before required. The duty of a purchaser to make inquiry of an occupant of premises, does not depend upon the size, style of architecture and finish of the house in which he resides.

*Mr. James Ryon* (with him *Mr. James M. Healy*), for the defendant in error:

1. In all the assignments in which the question was raised by offers of evidence or the charge of the court, the distinct question was, was the deed of August 5, 1872, void as to the

plaintiff? The contention was that this deed was a concoction made with the view and intention of suppressing it until John J. Crosland could incumber the property to its value, and of setting it up eventually. The court held the plaintiff to the rule of Harlan v. Maglaughlin, 90 Pa. 293, and the complaint of defendants, in this respect, is without foundation.

2. The court could not ignore the fact that the deed to Mrs. Crosland had never been placed on record. It was therefore thought necessary to go back of the deed and show a parol sale and a possession under it. Wherefore, it was pertinent for the court to charge, that to establish a title to lands by a parol sale, the proof should be clear, precise, distinct and satisfactory: Miller v. Hartle, 53 Pa. 108; Miller v. Zufall, 113 Pa. 317; Lord's App., 105 Pa. 451. Moreover, the evidence raised a question of actual collusion to cheat and defraud creditors. And if the parties conspired to get a loan on both properties, nearly or quite equal to the value of the whole, they could not set up the parol sale and the deed, to defeat the mortgage upon the lot conveyed: L'Amoureus v. Bandenburgh, 7 Paige 316; Meehan v. Williams, 48 Pa. 240.

3. The mortgage of 1874 and the acts and declarations of John J. Crosland were admissible as evidence of circumstances to contradict Crosland, and for that purpose they were offered. John M. Crosland was acting for John J. Crosland, and what he said and did in the business of his agency were part of the res gestæ and properly admitted: Bank of Bellefonte v. McManigle, 69 Pa. 161; Rees v. Livingston, 41 Pa. 113; Cattison v. Cattison, 22 Pa. 275; York Co. Bank v. Carter, 38 Pa. 446; Woodwell v. Brown, 44 Pa. 121; Featherman v. Miller, 45 Pa. 96. And, when the bona fides of the transaction is assailed by creditors on the ground of fraud, and some evidence is adduced tending to show collusion, declarations of the grantor subsequent to the conveyance are admissible: Souder v. Schechterly, 91 Pa. 87; Hartman v. Diller, 62 Pa. 37; Scott v. Heilager, 14 Pa. 238; McElfatrick v. Hicks, 21 Pa. 402; Confer v. McNeal, 74 Pa. 112; Tripner v. Abrahams, 47 Pa. 220; Rogers v. Hall, 4 W. 359; Lowe v. Dalrymple, 117 Pa. 564.

4. Knowledge of possession does not have the effect of visiting the purchaser with every fact and circumstance which he

might have learned by inquiry of the person in possession: Wright v. Wood, 23 Pa. 120; Kerns v. Swope, 2 W. 78; Hood v. Fahnestock, 1 Pa. 474. The property, which for convenience was called two houses, was built up under one roof and appeared as a store on one side and as a dwelling on the other. The duty of the defendants was to show that the nature of the property was such, and its occupancy such, as to be visible and notorious and such as to attract the attention of purchasers. What makes inquiry a duty, is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell: Meehan v. Williams, 48 Pa. 240; and under the facts the court was bound to submit the question to the jury: Green v. Drinker, 7 W. & S. 444.

OPINION, MR. JUSTICE WILLIAMS:

This was a proceeding by a purchaser at sheriff's sale to recover possession of the purchased premises. The plaintiff below, The Mutual Saving Fund of Pottsville, showed a regular paper title. The evidence began with a deed from Ryland to John J. Crosland for two lots of land, of which the lot in controversy is one, bearing date July 15, 1867. Then followed a mortgage of both lots by Crosland to the Saving Fund for $3,000 dated November 29, 1872, [recorded the next day]. Upon a judgment obtained on this mortgage the sheriff's sale was made to the plaintiff in 1882. This showing entitled the plaintiff to recover against John J. Crosland and all persons holding under him, and put the defendants upon a showing of the title under which they claimed a right to the possession.

They set up a title under Catherine Crosland the mother of John, alleging that she acquired title from her son before the mortgage to the Saving Fund was given. Their allegation was that in 1867 John borrowed about $3,100 from his mother, to aid him in building a block on both lots, under an agreement that he would convey to her the easterly lot, the one now in controversy, with the structure erected thereon, in payment of the money so borrowed; and that in pursuance of this contract he did convey said lot to her by a deed dated August 5, 1872, which she did not record until in 1877, but under which she took possession, and let the building to tenants. Upon this evidence, two principal questions are

raised. First, was the deed by John to his mother made in good faith, or was it a device to cheat and defraud the Saving Fund from which he was then negotiating or about negotiating the loan of $3,000? If the deed was fraudulent the plaintiff was entitled to recover. If it was not fraudulent, then the second question was reached, viz.: did the Saving Fund have notice of this unrecorded deed to Mrs. Crosland? If so the defendants, except John J. Crosland the mortgagor, were entitled to the possession as heirs at law of Catherine, their mother, to the extent of their undivided interest in the premises.

Upon both questions the testimony of John J. Crosland was largely relied on by the defendants. He testified to having borrowed about $3,100 of his mother in 1867; to the agreement to convey to her one of the lots in payment of this loan; to the taking possession by her of the dwelling part of the block in 1868; and to having given explicit notice of her ownership of the lot to Dornan, the solicitor of the Saving Fund, when the loan upon the mortgage was applied for in 1872. The plaintiff sought to impeach the witness and destroy his credibility by showing his acts and declarations of a character wholly inconsistent with his testimony and with the bona fides of his conveyance to his mother. The offers embraced in the assignments of error Nos. 4, 5, 6, 8 and 9 were made for this purpose, and were properly admitted. They tended to show a line of conduct extending up to the time of the recording of the deed to his mother and the assessment of the lot to her in 1877, which was not to be reconciled with his testimony and which, if believed, was sufficient to discredit him as a witness. The charge of the court and the answers to the points so far as they related to this subject, properly submitted the bona fides of the deed from Crosland to his mother to the jury for their determination, and with it the question of the credibility of John J. Crosland. The acts and declarations of John M. Crosland in connection with the negotiation of the second loan were properly admitted. He made the preliminary negotiations for it, offering as security the two lots embraced in the former mortgage; and his son consummated the arrangement by giving a mortgage upon both lots in 1874, as he had done in 1872. What was done by the father was adopted and acted

upon by the son in such manner as to make the father's acts and declarations his own.

Moreover, the relationship of these parties and the circumstances as disclosed by the evidence justified their admission upon another ground. A son about to contract a loan makes a deed to his mother which is kept from the records. He goes into possession of part of the block and the remainder is occupied by tenants put in possession by himself or his father. After two years the father opens negotiations for a second loan upon the security of the same lots, with no mention of any interest of his wife in either of them. The son makes the new mortgage covering both, and acknowledges it before his father as a justice of the peace. When the Saving Fund insists on the insurance against fire, bargained for as collateral to the loans, separate policies are issued by the father as an agent of the insuring company and the mother transfers her policy to the Saving Fund, " as collateral security in the case of fire for certain loans made John J. Crosland on the above described premises." This transfer was witnessed by the father and by him approved as agent of the insurance company. Here is evidence of knowledge on the part of the mother and father of the loans by the son, and of their co-operation in obtaining them and complying with the terms on which they were obtained. The assignment of the policy does not relate simply to the last loan made in 1874, but, to " certain loans made John J. Crosland on the above described premises " and shows knowledge of the existence of both loans. These facts and circumstances taken in connection with the subsequent assertion by both father and son of a valid title in the mother were competent evidence upon the subject of the bona fides of the conveyance by John to his mother. Their value was for the jury, but they tended to show a combination between these parents and their son to make use of the deed to the mother to cheat and defraud the Saving Fund.

The fifteenth assignment of error relates to the answer given by the court below to defendants' first point. The instruction asked for by this point was, if the jury should find that Mrs. Crosland gave to her son about $3,100 in 1868 with which to build the dwelling, upon a promise that it should be conveyed to her in consideration therefor, and he afterwards

in 1872 made the conveyance to her in accordance with such agreement, she had a good title to the property which at her death descended to her heirs. The learned judge prefaced his answer with this statement: "To prove a parol sale of lands, the proof should and must be clear, precise, distinct and satisfactory." This statement was unnecessary. There was nothing in the point to call for it, and there was no question raised in the case to which it was applicable. The parol agreement if made in 1868 was relied on simply as showing the consideration for the deed from the son to his mother; but the defendants' title rested on the deed, and the court properly instructed the jury that if the deed was made in good faith and the Saving Fund had notice actual or constructive of Mrs. Crosland's title, the plaintiff could not recover. We think therefore that the prefatory remark of the learned judge could not have misled the jury. It was superfluous, but no question was submitted to the jury in regard to the alleged parol agreement, and their attention was properly drawn to the real questions on which the validity of the deed depended.

The 19th assignment of error raises a more serious question. The plaintiff's third point asked an instruction upon the subject of notice by the possession of Mrs. Crosland by her tenants. It was as follows: "If the property in suit was built with the building occupied by John J. Crosland and is a part of the same building under one roof, commonly denominated a double house, one of which was in 1872 occupied by John J. Crosland, and the other if occupied, was by a tenant . . . . and there were no front porches to the house in suit, and it was otherwise apparently unfinished, and the rents were sometimes paid to John J., and if the facts were such as to appear to an observer that the two houses were one property, there was not such clear, unequivocal evidence of possession in Catherine L. Crosland as to make it a duty of the plaintiff to inquire of the occupants of any of said premises, and the plaintiff is entitled to a verdict for the whole of said premises." This was affirmed, and the jury thereby instructed that the plaintiff was relieved from the duty of making inquiry, if the facts grouped in the point were found by them.

These were, first, that the house in controversy was built with that occupied by John as part of the same building under

Opinion of the Court.

one roof, and that together they constituted a double house; second, that when the mortgage was given, John was in possession of the store and the dwelling was occupied by tenants; third, that there were "no front porches to the house in suit" and it was apparently unfinished; fourth, that the rents were sometimes paid to John. There was no controversy over either of these facts. The store and dwelling were erected together, were under one roof, and made a "double house"; the store was in the possession of John and the dwelling in that of tenants; there were no finished porches in front of the building in 1872, and, although not visible to an observer, the rents were "sometimes paid to John." The fifth clause in the point, "and if the facts were such as to appear to an observer that the two houses were one property," taken in its connection with what precedes it, seems naturally to refer to the facts grouped in the point. The effect of the affirmance of this point was to instruct the jury that the four facts brought to their attention were sufficient to relieve the plaintiff from the duty to make inquiry on the premises, before taking the mortgage, or, that from those facts they might find that "to an observer the two houses were one property," so that the observer would have no notice of the separate possession of the dwelling. The point and answer were clearly misleading. The fact that both parts of a double house are built together affords no presumption against the occupant of either part. They could not be conveniently or economically built in any other manner. The fact that the claimant of one part of a double house is in possession by tenant, instead of in person, is immaterial. The possession of the tenant is the possession of his landlord. The absence of front porches is a circumstance of no significance. The question for the jury, so far as this subject was concerned, was whether the building was suitable for or fairly capable of separate occupancy, and whether the modes of access to its parts and its external appearance were such, as to make this apparent to an observer. If so, inquiry was a duty. The facts brought together in the point whether taken singly or collectively afford no basis for a finding upon this question, and the natural effect of the affirmance was to invest these facts with a significance to which they were not entitled.

We are reluctant to reverse this case for the error pointed out in this assignment, but after a careful examination of the testimony we can not see how it is to be avoided. It is probable that the case was disposed of by the jury on the question of the bona fides of the deed to Mrs. Crosland, but we cannot say certainly that it was so. It is possible that the question of notice was that on which the verdict was reached, and that the instruction we have considered guided the jury to their conclusion. The other assignments of error are not sustained.

Judgment reversed and a venire facias de novo awarded.